May it please the court. Ms. Wilcox. Good morning. Today's appeal is about standing. More specifically, whether appellants have sufficiently pled an injury in fact. This appeal is not about the merits of the district's policy or whether appellants will be ultimately successful in their challenge to that policy. This case is also not a challenge to the entire process the district has set up when complaints are received about library materials. It's a challenge only to the automatic removal of those materials triggered by a complaint. Here appellants have alleged both that they have sustained an injury under the policy and that they are in immediate danger of sustaining a future injury under the policy. Counsel, this case is about standing and not about the merits, but can we determine whether there is standing unless we first determine whether the plaintiffs are in imminent danger of the deprivation of a constitutional right, in which case maybe we do need to look whether there's a First Amendment right at issue. I think this court can determine whether the right to access exists, which we would assert that Pratt is controlling on the Eighth Circuit and PICO has not overturned that decision. So the issue is standing. We do not think that this court needs to reach the merits of whether the right to access has been violated by the policy, but yes, we would assert that that right exists and that they have stated a claim and that it only should reach whether it is, the merits of that claim should not be reached. In fact, in a recent decision, the Voting Rights Act case out of Arkansas, this court found that sometimes plaintiffs have standing and no cause of action and sent it back and in doing so relied on the case Animal Legal Defense Fund v. Lott, also out of this circuit, which held that whether a plaintiff has a cause of action, however, goes to the merits of the claim does not implicate the court's statutory or constitutional power to adjudicate the case. And in the Animal Legal Defense Fund case, which is Eighth Circuit 2021, the case was also dismissed by the district court on standing because of too speculative of an injury was the finding there. The Supreme Court has said dismissal for lack of sub-dramatic jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of the Supreme Court or otherwise completely devoid of merit as not to involve a federal controversy. What is the injury in fact alleged? The injury here is that there is a right of access to receive ideas and information. And when the policy is triggered by any complaint, the book in the library is automatically removed. And that causes the injury to the students and parents who are filing on their behalf. But factually, there is no dispute about the occurrence of such an event? There's no dispute that there was an occurrence in this case where the policy was enforced. And that the record also supports there is a preliminary injunction record in this case as well. And so there's additional information in the record that for a 12B motion could be considered showing that this is the policy. It has been enforced. It will be enforced. And the injury alone that was sustained in 2022 when the book was removed is sufficient for standing. Because what the standard is, is that you have sustained an injury or are in danger of sustaining a future injury. And our position is that both have been shown here. So what the record shows, well as the policy currently exists, the complaint could trigger the removal of multiple books in any category of materials because one person objects to it, the allegations reflect, the policy is triggered any time a complaint is submitted. And these are materials that have already been pre-selected for the library collection. So credit to the school district for having such a rigorous policy for selecting books that are in the school. Our claim is just that once those books are there, you have a right of access to those materials. And when that is taken away, that right is violated and then of course the associated due process right that we've asserted because of no notice of right to appeal is also violated. Counsel, how does that differ from the situation where a teacher, for example, determines what books to include on a reading list and which ones to exclude? This case does not deal with curriculum. So it is not a case that deals with what I think still can be challenged if there's a policy. And I think in that case, you might run into a situation where it might be the government controlling government speech, which has come up in cases where in this case, this is a student's right to access ideas and information, which exists outside of that context. The factual allegations here with the additional information show so that the policy has been enforced. There are complaint and committee review notes further supporting that this is the policy that will be enforced in the future. Counsel, just a follow-up question. So your allegation of injury is not the removal of the book, but the policy? The allegation of injury is that when the policy is triggered, which has happened and we think we have pled will happen again, the injury attaches when the access is denied to all students. And the policy exists so that it applies to all schools. So if a book is challenged in one school, it is removed from all libraries upon review immediately  So without the policy, would that prevent the school from removing the book? It wouldn't prevent the school from reviewing the book, and it wouldn't prevent the school from removing a book pending the ultimate decision of the review committee and the school board. And then that would be a separate challenge. So I think what opposing counsel has argued is that sure, you could maybe challenge a book after it was removed, but zooming out a bit, that's not the issue in this case. And it has been the issue in other cases, and the merits of a policy like this have yet to be determined by an appellate court. So it would be a novel issue to be decided, but it is all based on the First Amendment right to access. So we do not think that we have to challenge an individual book to challenge the underlying policy. In fact, as this court held just last year in the Parents Defending Education v. Linmar case, which is highly relevant to standing in this case, that there can be even, so even if the injury had not been sustained by the students when the book was removed in 2022, a pre-enforcement challenge to a school policy on First Amendment grounds is permitted. And that case relied on the cases that appellants rely on here, which are the prosecution cases, but this court held that that applies in this context to a school policy. The Linmar case also found that when a course of action is within the plain text of a policy, a credible threat of enforcement exists. So enforcement history is relevant, and here is the case, that is the Parents Defending Education v. Linmar 83 F. 4th 658 from 2023. I believe it is cited in our reply brief and maybe in a footnote in our opening brief. So enforcement history is relevant. Here, of course, we are alleging that the past enforcement is an injury in and of itself, and it shows that an injury has already been sustained. So in Linmar, again, the policy was recently enacted in 2022, the same year that lawsuit was filed, and there had been no established practice of non-enforcement that could assuage concerns about the imposition of discipline under the policy. However, because the plain text of the policy indicated here, like there, the injury will occur if the policy is enforced. So here, such removal violates Appellant's First Amendment and due process rights. And here, the recent history is of enforcement, not non-enforcement. So while there's been one book removed, and that's what's in the record, the rest of the record shows that there's a statement in an affidavit from the superintendent that this is the policy that will be enforced when a complaint is lodged with the district. Counsel, your argument seems to be predicated on the right to receive information in a school setting in PICO. But in that case, the right wasn't all-inclusive. Don't you have to show intent to viewpoint discrimination, some sort of ill intent? So yes, our right is premised on the right of access, which this court found in Pratt, which again, I would say is binding on this court, and PICO. That's correct. In those cases, do look at motivation. We think in this case, what that would go to is there has been an argument that the policy is content-neutral, which we disagree with. But whether or not the policy is content-neutral or content-based, that goes to the level of scrutiny applied, not whether a claim has been stated. And just like looking at motivation behind a book removal to prove that that right of access has been violated, here we would actually be looking at justification of the law to show that it is or is not content-based. That standard comes from the Reed case, the First Amendment case, where they find that even a policy or law that might be content-neutral on its face can be content-based if the justification  I did briefly want to address redressability. That is an issue that the trial court noted in a footnote, but opined that even if there was an injury, in fact, the claims were not redressable. I think the best case here is 281 Care Committee v. Arneson, where if a discrete injury can be relieved by a claim, then it's redressable. So yes, there might be other ways a book can be removed, not triggered by this policy, but that's not what we're challenging. The Limar case is actually relevant here as well. In that case, it was argued that there was a law that prohibited the same conduct, so there was no redressability if that policy wasn't joined. And there, this court said that an order granting relief would redress an injury caused independently by the policy, which is our same position here. So, again, while a specific policy like this has yet to be examined by any court, there's no case supporting the appellant's argument that a school district policy related to book removals can never be challenged because of the school's broad discretion in adopting policies and procedures. In fact, the reason a policy like this has not been challenged might be that another one doesn't exist, but the right exists for the students to challenge the policy. So yes, deference is given to school officials, but that doesn't make their policies beyond challenge, as we have seen in past book removal cases and other policy cases like the Limar case. Appellants have standing, and the court need not reach the issue of whether they've stated a cause of action or the merits of that cause of action, as I explained this court recently pointed out. I see I'm in my rebuttal time, so I'd like to reserve the rest of my time if there are no more questions. Thank you, Ms. Wilcox. Mr. Marriott. Thank you, Your Honors. Good morning, and may it please the court. We've already touched upon some of these issues, but this case was dismissed because there's not an injury in fact, and there's no Article III standing for appellants to sue. We've touched upon and we heard from opposing counsel that, you know, the injury in fact is not something that's concrete, right? This is a anticipated hypothetical potential future temporary removal of a book while it's reviewed by a committee before the board makes a decision. Does it matter that this is a policy? It's something that's always in effect, doesn't necessarily require some action. It exists, and so the challenges to the very existence of a policy that could be a threat to First Amendment rights. Judge Smith, it doesn't, and what I would say is that this is very different than the Lindmark case, right? So we've seen a number of cases that have been cited in the briefing that all talk about expression, right? Expression, free speech. And so when we're talking about that protected liberty interest we're looking at, is it stifling the actual expression? That's not been alleged in this case, and so we have a policy in place that is viewpoint neutral. It's been determined by both the Eastern District and the Western District of Missouri as viewpoint neutral because it's been challenged, identical language in two different cases. The Lindmark case is one, expression, and two, prosecution in the sense that if the students expressed a certain viewpoint then they would be disciplined. And so the court in that case likened that to, I mean, essentially a criminal statute when we look at those prosecution cases. And that prosecution or risk of punishment or penalty then has a chilling effect, right, where you have to self-censor. This is not a case where self-censorship has been alleged. It's not a case where, and nor has it been alleged that the policy itself has some viewpoint discrimination. It's viewpoint neutral because it applies it equally to any type of challenge from any person in the district. Counsel, at what point do we have to determine whether it is in fact viewpoint neutral given that we're here on standing? Yeah. And so what I would say, Your Honor, is that the viewpoint neutrality piece, I'm going to go back and when we look at suffering an injury, and if we look at the line of cases, and PICO is the one that they're saying is a protected interest, right, all of the briefing, the court's order in this case, the court's orders in both of the protective orders, or the motions for preliminary injunction, the orders on those denying those, shows that there's, one, not an injury in fact, and two, the viewpoint protected liberty interest that they're expressing here under PICO is suspect, right? If we look at the PICO decision and we look at the plurality opinion and all the cases that say what is the precedential impact or plurality opinion, we have to limit PICO to what Justice White said in his concurrence with just the judgment, which is, I'm not going to go on and have a novella or largely documented discussion of free speech interests because that's not here yet, right? We haven't heard that. What I'm going to say is that there's an issue of fact before the trial court. I'm going to agree with the appellate court on that, and it's limited to that. So PICO doesn't, it stands for the proposition that there may be a liberty interest or a constitutional right to access information, but that decision was not decided and as Justice White said in his opinion, I'm not going to get there until we get there, and that case didn't come up again to the Supreme Court. And counsel, what about Pratt? What's the precedential value of Pratt? Yeah, and Pratt, like I would say for PICO, can be differentiated. So it's a video case related to religious content or concerns about religious concerns. It was a case that was decided shortly before PICO. I would say that PICO should provide us more insight into where we're not, and Pratt does not go as far as appellants claim it does. Pratt was a permanent removal of videos based on religious content. Here, what we have challenged is a speculative potential hypothetical future challenge, because they're not challenging the book that was temporarily reviewed and only partially restricted from elementary. We have a temporary potential removal. And it's not based on any religious expression or religious concern or viewpoints on religion from the school district. So when we talk about the viewpoint neutrality, and this gets, Judge Grouse, this gets to the discussions of whether this is traceable, right? So if we look at all three elements of standing under Article III, so suffered an injury in fact, or that injury is imminent, which it's not, that it is fairly traceable to the challenge conduct of the defendant. It can't be here because the language is plain in the policy itself. The record is clear, and they attached to their complaint, so it's part of the complaint, the policy and regulation that relates to the challenge process for the temporary removal, the review by a committee, and then a vote by the board. That was adopted in December of 2012. Plaintiff's complaint also only alleges one book in the entirety of that policy and regulation that's ever been challenged in the independent school district. I'd say that's pretty remote, that a book's going to be challenged and doesn't make it imminent. And then finally, it gets to that last point, Judge Grouse, about the likelihood of redressability. And so when we talk about what's been alleged here is a temporary removal for a short period of time while it's reviewed, as Judge Ketchmark noted in the footnote of her order granting the motion to dismiss, dismissing this case, is that this doesn't affect an administrator or a librarian from removing a book, right? It's just for a challenged material. There are policies in place for culling books, right? So I mean, there may be books that have a torn cover, or maybe books that are just not factually accurate anymore because we've learned something new. I found that part of the district court's opinion hard to follow. It seems to me that if there is imminent danger of deprivation of a constitutional right under PICO and this policy were to be invalidated, that it would redress that injury. Well, I think the way that this challenge has been posited in the complaint is that it's only as to challenges brought to the board by somebody else, right? Brought to the district, and not as to other policies or practices or procedures or how a district internally operates, right? I think the difficulty in this, and your Honor, this gets to some of the practicalities, right? So we are here on a case that is not challenging the removal or temporary removal of any actual book. It's challenging a policy about an intention of event that they may not have access to some book, but they don't know what book, upon a challenge by someone. And what I would say is that the reality is we have schools that have a finite number of books and libraries to begin with, right? So we don't have an issue with curating and what books are in there. But they also have to have the ability to update those books, change those books, remove those books. And so under those other And that's what makes, I think, the redressability, or at least how I took the trial court's decision or footnote on that point, to say that it would be difficult for a court to actually redress the alleged harm here. Going back to the first part in terms of the alleged injury in fact, your Honor, what I would say there is that when we look at that, you know, in Missouri v. Biden, standing to sue is a doctrine rooted in the traditional understanding of case or controversy under Article III. It takes you back to Civ Pro. The irreducible constitutional minimum of standing requires plaintiffs to show that they, one, have suffered an injury in fact, fairly traceable to the challenged conduct of the defendant, and that it is likely to be redressed by a favorable judicial decision. When we look here, it has to be that the legally protected interest is concrete and particularized, and actual or eminent and not conjectural or hypothetical. And so what I would say there, your Honors, is that the legally protected interest, if that is what we're looking at to PICO or even Pratt, it's different. And it's not even what PICO or Pratt says. If we look at the concrete or particularized, actual or eminent, here it is not concrete or particularized or actual or eminent. It is, intend to use the library, fears a future event, somebody challenging, and upon that future event. That event hasn't happened, and it's pretty remote. And I hope it doesn't happen, for the district's sake and for everybody's sake involved here today. Here, plaintiff's lawsuit is entirely predicated on that hypothetical future challenge. This is not a prosecution case. It's not an alleged chilling impact on expression. That's when we look at any and all of the cases cited for prospective relief, where we're talking about a prospective harm or we're finding standing for a First Amendment violation. Plaintiff relies on a series of cases that stand for the proposition that protections are afforded are different because they're First Amendment cases, but those are all expression cases. They're all expression cases where there is a limitation or regulation on the there is the threat of prosecution or penalty or discipline, for instance. And that's what the Lenmar case is. There was a threat of discipline that related to a student's expression of their First Amendment rights to express their feelings on transgender student issues. And what the court said is that having a policy that penalized their ability to make that discipline for making those statements. And in that instance, the court said, since there's that risk of prosecution, since it's expression, we don't have to go and throw ourselves in harm's way. We can hold our tongue and seek redress now. Those are all expression cases. The Susan B. Anthony case, that's an expression case with prosecution. Elrod v. Burns is a Chicago political patronage case. That is an expression with prosecution or penalty case. Marcus v. Iowa Public Television, the same. Watchtower Bible, that's a pamphleteering with expression and penalties as well. And so what I would say, Your Honors, on all of those items is that we're arguing about hypothetical speculative nature of the appellant's alleged harm. It hasn't occurred. It might not occur. And that there's not enough there for Article 3 jurisdiction because there's no injury in fact and it doesn't meet the elements of any of those cases cited. The harm alleged here is not prosecution, not discipline, not suspension, not chilled speech, not self-censorship. It's at most the temporary removal of a text on viewpoint neutral policy on a protected liberty interest that is very, very narrow based on Justice White's concurrence with the judgment in PICO. And certainly it's beyond, you know, the relief sought here is beyond what Judge White would seek there. Again, PICO is permanent removal of books. That was a school board that went to a conference, had a list of books that they thought were bad, came back, formed a committee. The committee recommended keeping a bunch of those books and then the school board voted against that committee decision to permanently remove a number of books because they were un-American, un-Christian, anti-Semitic, and I think the quote is just plain filthy. And the court came back and said, well, we don't want you focusing on those things, right? So if we look at Rehnquist's dissent, yeah, if we have somebody come in and say, you know, I am a Republican and we are no longer allowing any books by Democrats, that might rise to this issue, but we're not saying that here. And so the facts in PICO, one, aren't anywhere close to a temporary removal for review, and two, don't confer the rights that I think appellants in this case claim they have. I'll touch briefly upon, you know, what we have also included in our briefing is that, you know, the court addressed this on standing and what I would say is that, you know, for the three reasons appellants fail to meet all three of the requirements for Article III standing to have a claim before the court, we've also addressed two additional points in our briefing that even if the court were to find, this court were to find that there is standing, that they fail to state a claim for other reasons and that's largely our discussion of PICO and that PICO does not provide the precedent that appellants say it does with fuller discussion of Justice White's position in that case. And then finally, what I would say, your honors, is that we have a third issue that we raised, which is also a dismissal for failure to state a claim on whether appellants do process claims fail as a matter of law. And what I would say there is that, and this ties in somewhat to the protected liberty interest when we're looking at whether there's an injury and harm and whether they have standing, but the liberty of property interest that they express, which is the right to access information, is not clear. And so this is not like a student discipline case where a student is going to be removed from school and have no access to information. There are due process requirements for that and that's built into the law. This is just a temporary inaccessibility of a text while it's reviewed and a decision is made. What I would say is on the one book that's been challenged is that that book was just restricted from elementary schools and not removed from all the schools. And for all those reasons, we'd ask that this court affirm the dismissal. Thank you. Mr. Marriott. Ms. Wilcox, your rebuttal. Thank you. I think I'd start actually with Rehnquist's dissent in PICO because I do think it is important to point out that what he said there was that he cheerfully conceded what the plurality, what Justice Brennan said, which was if they removed, quote, all books written by or in favor of Republicans or all books authored by blacks are advocating racial equality and integration. He said, yeah, that would be unconstitutional. Well, that's what this policy allows is one person can lodge a complaint, can list every book that was written by or in favor of Republicans, and they would be removed automatically because the policy requires it. And this, again, not to reiterate, is not just a pre-enforcement challenge. The policy has been enforced. And the record is in the appendix with what's in the preliminary injunction record and in the allegations alone are allegations that it will be enforced again. Does it matter that the policy's been in effect roughly 12 years and there's been one use of it? It does not. So while past enforcement is relevant, it's not the only thing to look at. I do think here the past enforcement recently does show that future enforcement is likely, especially if you look at what's going on nationwide with book challenges. And then I do think the Lindmar case is very relevant there as to how pre-enforcement and the text of the policy itself would provide the credible threat. That case just last year was very clear that that provides standing even for pre-enforcement challenge of a policy that has not been enforced. But here again, it has been enforced. So the recent history is of enforcement and the record shows that it will continue to be enforced. I do think Lindmar is directly on point as far as it goes to standing. And yes, the right of access is not exactly the same as expression. We can all acknowledge that. But it does exist. And I think that you do have to look at Pratt and Pico together. And in Pico even, since that is the focus, so Pratt is controlling. But even in Pico, five justices did send the case back for factual development. And the concurring opinion would not have sent it back if there had not at least been a claim, an arguable claim, for the right of access. So that claim exists. And that's the claim that our allegation is based on, is the right of access. Does this policy violate that right when the books are automatically removed? And we are just challenging this part. It is a discrete and independently, it will be independently relieved of the injury if this part of the policy is enjoined. And as I said for 281 care is relevant to that point. You do not need to reach the merits and the due process interest is related to the liberty interest. We would respectfully ask that you reverse the dismissal and send it back for further factual development. Thank you Ms. Wilcox. My thanks to all counsel for participation and argument before the court this morning. We will continue to study the briefing and render a decision in due course. Thank you.